May it please the Court, Chris Kilburn on behalf of the appellant Theodore Edward Norris. I'd like to reserve a minute for rebuttal, if I may. Yes, and could you keep your voice up? Oh, yes. Thank you. Mr. Norris' due process rights and privilege against self-incrimination were violated in this case when the district court permitted the prosecution to cross-examine Mr. Norris on his post-arrest pre-Miranda silence and then to subsequently comment on that silence as substantive evidence of his guilt during the government's closing rebuttal argument. Even if the Court finds that the cross-examination and comments on Mr. Norris' silence, as the government argued in their response brief, if they were pre-arrest pre-Miranda, the case law in this area limits impeachment and limits comment in closing to situations in which an individual is actually questioned by law enforcement, where there is time and opportunity for a response and explanation, where there is silence in the face of accusation, where an individual is confronted by evidence and has time to respond or to react. In this case, as the district court noted, Mr. Norris' silence was not in response to officer questioning. Things were happening very quickly. It was a highly charged atmosphere, a very coercive atmosphere in which he found himself. He was never given a chance to explain himself, as he was at trial to the officers who arrested him when they initially encountered him. He was never even given a chance to speak. The officers approached him. One officer pulled in behind him with his emergency lights on in his vehicle. The other officer emerged from the desert with his gun drawn. They never inquired anything of Mr. Norris. And it was obvious that they were not open for discussion about anything either. They forcibly removed him from the truck. They were yelling at him. They jumped on top of him. He's a 64-year-old disabled vet with a rod. Just a minute, though. But all the statements we're talking about is before all that happened, right? That's all. That's the only period the government was permitted to inquire into. Well, they were permitted to, yes, Your Honor. But I believe that they went beyond the scope of what the court permitted them to do. You mean in the cross? Yes. How did they do that? Can you point me to somewhere in the transcript where they went into something like that? Yes, Your Honor. And that's at page 12, day 3 of the trial, reporter's transcript, day 3. That's excerpts of record. Page 12 is page 1 of the transcript. Excerpts of record, page 99. Page 99, okay. And that's where it starts. That's where the cross-examination starts. And Mr. Norris's answers bleed in or spill over into the point in time. Well, that's the answer. That's the question. Yeah, but there's no limitation provided by the court, Your Honor, as to how to do it. No, but the question didn't ask for anything in that area, right? That's correct. Well, then what's the error? I think the answers did. And, well, the error is, well, the first error, I think, the most egregious error is actually commenting on Mr. Norris's silence in closing argument. And I think, as the district court noted, there was probable cause to arrest Mr. Norris immediately when the officer saw the marijuana in the truck. So, again, our position is this is a post-arrest case, that he was not free to leave the scene of the crime when there's an officer holding him. So the question is about when he first saw the officer. At the initial encounter, that's correct. Yes. When you say initial, but there's no question that goes beyond that time period, is there? Well, I think Mr. Norris's answers go beyond that time period, Your Honor. Well, I mean, you know, that's just volunteer information. That's not the question that's asked by the prosecution. Well, that's correct. That's correct. So how can that be error? Well, because I don't think it was cleaned up for the jury. I don't think the jury understood there was no limit. Well, cleaned up, you know. Provided that. But you or whoever was defense counsel made a motion to strike that portion of the answer. No, that's correct. But I did object to that line of questioning very clearly both the second and third day of trial. And I believe this was an arrest situation, a post-arrest situation, as opposed to a pre-arrest situation, because no reasonable individual would feel they were free to leave a situation in which they're surrounded by officers. There's a car behind them with their service emergency lights on. They're facing officers coming out of the brush with a gun. I guess I'm not understanding. He testified, this is all cross-examination, right? That's correct. He testified that he was duped into driving the car. Yes, ma'am. And when they, when he's, and the cross-examination was why didn't you say something? That's correct. And the first time that they, he saw the officers, he could have said something and he didn't. So at what point did the district court, at what point here should the district court have done something that it didn't do? Well, I think the district court erred in allowing any sort of impeachment whatsoever, because if you look at the cases, I realize as a proposition, it is not unconstitutional if we're going to, if I accept that this is a pre-arrest case, it's not as a proposition unconstitutional to cross-examine someone's pre-arrest silence. But if you look at Fletcher. That is your impeachment. Yes, ma'am.  But if you look at, for instance, Fletcher v. Anderson, the Supreme Court's majority holding, which allows, which says pre-arrest impeachment is permissible, the time period over which the defendant, Mr. Anderson, had to report to his authorities in Fletcher v. Anderson that he had acted in self-defense was two weeks. In this Court's case in Opplinger, the pre-arrest silence that is commented upon is silence when Mr. Opplinger, it's a bank fraud case, is interviewed by internal bank investigators. He's being questioned. He's being inquired of. In another case cited Beckman, another pre-arrest case, Beckman's silence was at a port of entry of primary inspection. And again, I don't want to concede this is pre-arrest, but if it is pre-arrest, I think if you look at the pre-arrest cases, there are cases where individuals have the time, like I said, and the opportunity to explain themselves. And that was not the case here. Everything was happening split-second. Okay. So I'm just not quite understanding. The question is asked at 100, isn't it true when you first saw the officers, the first thing you said was I was duped? Is that what you said to the officers the first time you saw them? When you saw them, did you tell the officers I was duped? And the answer is I didn't say anything. And there's no objection. That's correct. So it was at that point that the district court should have done what? Well, I objected to the whole line of questioning, Your Honor, because I do not think there was any sort of time or opportunity or any interrogation or questioning on the part of the officers whereby a reasonable person in Mr. Norris's situation would feel free to explain himself. He was facing people, officers coming out of the desert with guns drawn. They're pulling him out of the car. They aren't asking him any questions. They're yelling at him. They jumped on top of him, and they cuffed him. And I think it's a very coercive situation. And, again, I think it's a post-arrest situation almost immediately. I mean, the lapse of time between the initial encounter and the actual forceful removal of Mr. Norris from the truck is very de minimis. So I do believe this is a post-arrest case. And any kind of comment on his silence, especially when he invoked later on, when he was actually inquired of, he invoked his Miranda rights. Is your point, number one, an evidentiary ruling that there was not sufficient time in which the defendant could explain himself? And, second, a constitutional ground that this was indeed an arrest immediately upon the officers talking both of the crimes. That's correct, Your Honor. Yes, Your Honor. I believe it was an arrest at the initial encounter. And if it wasn't, I still believe it was prejudicial and error, and not harmless error, certainly, for the officers to comment on his silence or for the court to allow the government to impeach him with this pre-arrest silence. With the indulgence of the presiding judge, we haven't heard at all from you regarding the claimed error of instruction. Would you like to address that issue? As to mere presence? Yes. Oh, yes, Your Honor. I think but for Mr. Norris's presence at the scene of the crime, the government would not have had a case against him. The key evidence that they had was his presence. It was their primary evidence of guilt. Isn't it kind of incongruous to give a mere presence instruction when nobody else was present? I don't think so, Your Honor. Have you ever seen a case where that was done? You know, there's a load of drugs in the truck. The guy sitting in the driver's seat, he's the only one there. And have you ever seen a case where a mere presence instruction was given and that kind of thing? Not with those exact facts, Your Honor, but there was evidence that there were other people in the desert who crossed the marijuana that day. And my client's testimony was that there was someone else in the desert who loaded up the marijuana.   And the other evidence that we have is that there was someone in the stash site just 20 yards away from the truck. And his testimony and the evidence that we presented was that there was other people out there that day. Thank you. Thank you. Thank you. May it please the Court, Celeste Corlett here on behalf of the United States. The district court did not err in allowing the government to impeach the defendant with his pre-arrest, pre-Miranda silence. Now, the defendant tries to make an issue of whether it was pre- or post-arrest. It does not matter.  And also, Lopez, those cases hold that post-arrest, pre-Miranda questions for impeachment purposes are permissible. The defendant never addressed these cases in his briefs. It was appropriate for the government to question the defendant on cross-examination on whether when he first saw the officers, he told them that he was duped. As Lopez explained, if the circumstances were, as the defendant testified, that he was duped, that he was tricked into being there and being the driver of this car of marijuana, it was reasonable to expect for him to disclose that in the heat of the moment. Those are the words that Lopez uses, in the heat of the moment, when he first sees the officers, to tell them that he was duped. That is a permissible question on impeachment. Now, the defendant in his reply, I'm sorry, today, says that, well, there was no chance for him to ever have said anything, and that's not true. The government went through step-by-step of what happened when the agents first saw the defendant. When they first saw him, there were no guns drawn. It wasn't until the defendant started rolling his car towards the first agent that he drew his gun. And in addition, the defendant himself testified that he did have opportunity to say things to the agents. He says at ER 103 that he told them to get out of the way so he could open the door and get out of the car. He also told them at ER 57 not to step on his glasses. And if you recall from the facts, this was at the exact same time that he says he's laying on the ground, he sees, he claims, the person who loaded the marijuana in his car standing next to the agents. He doesn't tell them, there's the bad guy. Instead, he says, don't step on my glasses. So he had plenty of opportunity to have said something when he first saw the officers. Now, I'm a little bit more interested in the issue of the mere presence of destruction. If Mr. Norris's story is to be believed, and he has an opportunity, I think he's got a constitutional right to have his story put to the jury. His story is that he didn't realize it was marijuana until he got out of the car and smelled it. And then he realized something was going on that was marijuana. At that time, he said to the fellow who was putting the bales of marijuana in, no. And then he didn't know what to do. So he got back in the truck, which was, after all, a loan truck to him. It was the mother's truck of a friend named Paul. Now, given those facts, which a reasonable jury could believe, isn't he entitled to a mere presence instruction? And if not, tell me why. No, Your Honor, because under Medrano, the mere presence instruction is given where the government's case rested primarily on the presence of the defendant and nothing more. In Medrano, Mr. Medrano went with a DEA agent to a restaurant, gave him the keys to his car. The DEA agent put four barrels of ephedrine in, came back, and Medrano paid him $72,000 and took the keys back. A little bit more than mere presence. Think about Negretti and Mendoza. In Negretti and Mendoza, Judge Wright of this Court wrote an opinion saying that Negretti was entitled to a mere presence instruction even though the evidence, circumstantial evidence, was that Negretti had been employed as a conspirator in counter-surveillance and inside the house where the cocaine was delivered, he handed a knife to Medina, another one of the co-conspirators, who pleaded guilty. So there was a lot more circumstantial evidence that Negretti was involved in the cocaine transaction than there was that friend Norris was involved in his marijuana transaction. And yet Negretti was entitled to instruction, mere presence, and the failure to give it was reversible error. Now, how do you distinguish Negretti from our case? I disagree that there was more evidence in the Negretti case. I believe that the most important factor was that the defendant in this case was alone and was in control and dominion over that marijuana. In the Negretti case, that wasn't the case at all. There was never any evidence that he was in control and had dominion over the drugs. Here this defendant does. There is overwhelming evidence to support that he was in control of these drugs. First, as the judge has already pointed out, the defendant was alone. There was no other persons there. The officers testified. They searched the area. They didn't find any other people there. The defendant was in the driver's seat. Also importantly, the defendant was driving towards the officer. Here is this truck full of marijuana, not only in the bed of the truck, but behind the defendant, behind his head, in a closed vehicle. But that's the government testimony. If I understood the defendant's testimony, the idea being if the defendant has a story, he's entitled to put that before the jury. Right. That he didn't know what to do after he saw the marijuana there. He had the truck, and he sat down behind the wheel and was sitting there. He doesn't say he was driving away. He said he was sitting there. Isn't that true? That's what he does say. But he does say that. Well, on that theory of the case, if all he did was smell the marijuana, say no, he's 64 years old, there's 300-plus pounds of marijuana in there, what would you have him do? Just lift it up and take it out and dump it out in the road and then drive the car away, right? No, Your Honor, but the important difference is that mere presence instructions are given when the government's only evidence is the defendant is merely present. That's not the case here. He's not merely present. That where the evidence is other than mere presence, but that evidence is only the government's evidence. It's not his evidence. And I would think that he would have an opportunity to have the jury consider his story with the requisite instructions. They may reject it, but they should consider it, shouldn't they? They were able to consider his story. They were able to consider his theory. And the other jury instructions did adequately address that. The government, I'm sorry, the court instructed them on possession, intent and knowing and said that it was not through ignorance, mistake or accident. That's what the government had to prove, that the defendant didn't possess it by ignorance, mistake or accident, which was exactly what his theory was and that he intended to deliver the marijuana. Again, those instructions were given. His theory of the case was allowed to be addressed through those jury instructions by claiming that it was through ignorance, it was through mistake, that he was tricked. All of those are addressed through the jury instructions that were properly given. His mere presence is not supported by the evidence at all because it's not merely that he is present, but that he is in control and dominion over the drugs. Counsel, his theory was that he was merely present. That's what he testified to, isn't it? He never testified that he was in control of the drugs. No, Your Honor, I disagree. He never testified I was merely present. He testified I was tricked, I was duped into this. His testimony was not mere presence. It was not to the end of the case that defense counsel asked for that instruction. Oh, you say that his testimony could only be seen by the jury as a matter of law, as saying I was in control, but I was duped? Yes. I didn't know or I didn't claim. Is that the defense? Yes, he's basically saying he doesn't know, he doesn't have knowledge. So what's the instruction for knowledge? It's whether or not he committed this. He has his knowledge instruction, his possession instruction, and it's through ignorance, if he had committed this mistake or accident, then they could not have found that he was guilty. So that addresses his theory of the case. Also, Your Honor, in addition to the him being in dominion and control, his refusing to get out of the truck, also resisting apprehension, I believe also goes to his goes to beyond him having mere presence. But that, again, is the government's view of the evidence. His view of the evidence is that he got out and got hit over the back of the head. He got knocked down on the ground and his glasses were when he killed her. I can understand why you like your evidence. That was not the sole evidence. That's true, Your Honor. And just briefly, in my last moments, I'd also like to discuss what defense counsel says. I didn't recall him ever saying this in his briefs, something about it's Miranda doesn't attach or Miranda attaches before there's some response or if he doesn't have a chance to respond. But in Velarde at page 1030, at Hernandez at page 797, and Lopez at page 846, all of these contradict that, and especially in Lopez, where the court had said that when he first saw Border Patrol at the port of entry, he could have given his duress defense. When he first saw the security officer, he could have given a duress defense. And with arresting Border Patrol, that then it was pre-Miranda and it was permissible to ask about his lack of saying that he was under duress. So Lopez especially is on point to contradict defendants' arguments. If there's nothing else, Your Honor, then we submit on our record. Thank you. Thank you. I don't think there are any further questions. I don't think you do. Does he have any time remaining? I don't think so. Are there any questions of the Court? I don't have any questions. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Tashima, Bea